# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | Bk. No. 04-04781-MWV |
| | Chapter 11 |
| Maxon Engineering Services, Inc., | |
| Debtor | |
| | |
| Maxon Engineering Services, Inc., | |
| Plaintiff | |
| v. | Adv. No. 05-00202-MWV |
| Puerto Rico Electric Power Authority, | |
| Defendant | |

## MEMORANDUM OPINION

The Court has before it "Debtor's Motion for Preliminary and Permanent Injunction Directing PREPA to Pay Outstanding Invoices" filed by Maxon Engineering Services, Inc. (the "Debtor").  The Debtor filed this adversary proceeding seeking, <u>inter alia</u>, turnover pursuant to section 542(b)[1] of payment on post-petition invoices submitted to the Puerto Rico Electric Authority ("PREPA") for payment for services and equipment provided post-petition by the Debtor to PREPA.  PREPA filed a memorandum in opposition, and the Court held a hearing on the matter on November 7, 2005.

## JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Resolution for Bankruptcy Cases" dated July 19, 1994 (Torruella, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## BACKGROUND

The Debtor is an engineering company that has provided services and equipment to PREPA both

---

[1] Unless otherwise noted, all statutory section references herein are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

before and after filing for bankruptcy protection on May 5, 2004.[2] The Debtor has commenced an

adversary proceeding seeking turnover of $511,911.58 for services and equipment provided by the Debtor

post-petition. PREPA does not dispute that much of these post-petition funds are owed the Debtor.

However, PREPA has maintained that it had a right to set off these funds against an unrelated claim

against the Debtor. The Court, though, has ruled against PREPA, holding that PREPA has no right to

setoff because PREPA's claim is a prepetition claim and thus cannot be set off against the post-petition

funds owed the Debtor. The Court has also found PREPA's withholding of the funds to be in violation of

the automatic stay, section 362(a)(3). In the instant matter, PREPA argues that not all of the funds owed

the Debtor are due and payable.

### DISCUSSION

At the outset, the Court addresses PREPA's argument that a preliminary injunction is

inappropriate in this case. PREPA relies on Matter of Chick Smith Ford, Inc., 46 B.R. 515, 518 (Bankr.

Fla. 1985), in which the court stated, "it appears that the courts generally have been in agreement that it is

improper to grant injunctive relief which requires the payment of monies in advance of the resolution of

the underlying controversy on its merits, which involves the very right to the monies claimed." The Chick

Smith Ford case, like the case at bar, involved the relationship between injunctive relief and a section 542

turnover action:

> The Debtor places a great reliance on § 542(b) of the Code which, inter alia,
> provides that an entity that owes a debt that is "property of the estate" and that has ". . .

---

[2] Three opinions released contemporaneously with this opinion provide a more detailed account of the relationships and claims involving these parties. See In re Maxon Engineering Servs., Inc., No. 04-04781 (Bankr. D. Puerto Rico Nov. 21, 2005) ("PREPA's Rule 9023 Motion to Reconsider, Alter, Amend and for Additional Findings"); No. 04-04781 (Bankr. D. Puerto Rico Nov. 21, 2005) (PREPA's "Motion to Lift Stay"); No. 04-04781, Adv. No. 05-00202 (Bankr. D. Puerto Rico Nov. 21, 2005) (PREPA's "Motion to Dismiss"); No. 04-04781, Adv. No. 05-00202 (Bankr. D. Puerto Rico Nov. 21, 2005).

> matured, payable on demand or payable on Order, shall pay such debt to or on the order of the Trustee, . . ." In reliance of this provision of the Code, the Debtor suggests that this section created a separate statutory remedy by Congress and, therefore, a Debtor is entitled to a turnover by way of mandatory injunction, if necessary, to collect debts owed to the estate. In support of this proposition, the Debtor cites the cases of In re Archer, 34 B.R. 28 (Bankr. N.D. Tex.1983); Commerce Union Bank v. Welch (In re Welch), 29 B.R. 819 (Bankr. M.D. Tenn.1982); Waldschmidt v. Columbia Gulf Transmission Co. (In re Fulghum Construction Co.), 23 B.R. 147 (Bankr. M.D. Tenn.1982); U.S. v. Perry (In re Perry), 26 B.R. 599 (Bankr. E.D. Pa.1983); and Bridgeport Co., Inc. v. U.S. Postal Service (In re Bridgeport Company, Inc.), 39 B.R. 118 (Bankr. E.D. Ark. 1984).
>
> The proposition urged by the Debtor misses the mark. There is no doubt that Congress enacting § 542 contemplated a turnover to the estate of properties primarily tangible properties and monies which were due to the estate without dispute which are fully matured and payable on demand. See In re Whiting Pools, Inc., 462 U.S. 198, 103 S. Ct. 2309, 76 L. Ed. 2d 515 (1983). It is clear that what Congress intended was to facilitate the administration of the estates, especially estates in reorganization cases by permitting a Debtor to obtain funds immediately necessary for survival; funds which were not in dispute, but which were only subject to a possible setoff under § 553 of the Code. E.g. In re Archer, supra; In re Welch, supra, both of which involved deposits in banks where the Debtor had an outstanding loan and the only question was to what extent the banks had the right to setoff their respective claims against the funds on deposit.
>
> However, to extend the proposition urged by the Debtor would mean that a Debtor may collect, by way of mandatory injunction, disputed claims to monies, claims based strictly on state law which are unliquidated and contingent. . . .

Id. (emphasis omitted) (alterations in original). The Debtor in the instant case is not pressing a claim that is strictly based on state law. Moreover, the Debtor's claim is not unliquidated and contingent, as a considerable portion of the post-petition funds at issue are not in dispute.

Further, the Court has already held that PREPA had no right to set off the funds against its prepetition claim against the Debtor, and, accordingly, the Court has held PREPA's administrative hold that PREPA placed on the post-petition funds to be in violation of the automatic stay, section 362(a)(3). Therefore, many of the merits of the underlying controversy have been settled, and it is proper for the Court to consider whether a preliminary injunction should be granted.

The granting or denying of a preliminary injunction is governed by a four-part test. The four factors to be considered are "(1) the movant's likelihood of success on the merits, (2) the potential for

3

irreparable injury, (3) a balancing of the relevant equities, and (4) the effect on the public interest."

Sunshine Dev., Inc. v. F.D.I.C., 33 F.3d 106 (1st Cir. 1994); see also Langlois v. Abington Hous. Auth., 207 F.3d 43, 47 (1st Cir. 2000).

(1)     The Debtor's Likelihood of Success on the Merits

The Debtor has commenced the adversary proceeding seeking turnover of post-petition funds pursuant to section 542(b), which provides:

(b)     Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

That the funds owed Maxon for post-petition services and equipment provided is property of the estate is not in dispute. This Court has rejected PREPA's claim that it has a right to set off these post-petition funds against PREPA's claim against the Debtor to recover damages, if any, that PREPA will ultimately have to pay to BBVA. Since PREPA does not have the right to set off the post-petition funds due and payable to the Debtor, the likelihood of the Debtor's success in the turnover action is high. The funds that are due and payable are property of the estate, and PREPA's own submitted document, Exhibit II, shows that $298,764 of the $511,911 sought by the Debtor is due and payable.

(2)     The Potential for Irreparable Injury

The Debtor argues that PREPA's failure to pay the funds due is having a substantial negative effect on the Debtor's ability to operate its reorganizing business. The Debtor states that the lack of cash inflow is jeopardizing its relationships with suppliers because the Debtor lacks the means to pay them. This threatens the suppliers' willingness to continue to provide the Debtor with services and credit going forward. The Debtor also states that its lack of funds is hampering its ability to engage in new projects. The Debtor's access to suppliers and ability to enter into new projects are essential ingredients for

successful reorganization.  Although the Court agrees with PREPA that PREPA alone is not to blame for the Debtor's financial situation, the Court finds that the sum of the post-petition funds withheld by PREPA is not insignificant in the larger picture of the Debtor's reorganization effort such that the withholding of these funds is not likely to cause irreparable injury to the Debtor.

(3)      Balancing the Equities

As the Court has rejected PREPA's argument that it has a right to set off and that PREPA has violated the automatic stay, the likelihood of success of the Debtor's turnover action at least in regard to the $298,764 that is currently due and payable is high.  This, along with the potential for irreparable harm to the Debtor if payment continues to be withheld, persuades the Court that the hardship to the Debtor will be much greater in the absence of an injunction than the hardship that will allegedly be suffered by PREPA if an injunction issues.  Also, many of the funds due are not in dispute.

(4)      The Public Interest

The issuance of a preliminary injunction will not adversely affect the public interest.  Rather, the public interest of business reorganization embodied in the bankruptcy code argues for the granting of the injunction.  A large portion of the post-petition funds sought by the Debtor are currently due.  These payments will significantly aid the Debtor in its reorganization by allowing the Debtor to pay its suppliers and continue its business.  The public interest is not furthered when payments due are not paid, jeopardizing the business of not only the reorganizing debtor but also the suppliers with which the debtor does business.

## CONCLUSION

The Debtor has satisfied each prong of the test for a preliminary injunction, and the Court will grant an injunction.  However, the Court agrees with PREPA that the entire amount sought by the

Debtor, $511,911.58, is not immediately due, payable, and/or outstanding.  The Court's equitable powers

under section 105(a) allow the Court to fashion equitable relief "to carry out the provisions of [the

bankruptcy code]."  Using the table of accounts receivable submitted by PREPA as Exhibit II in support

of its opposition to the Debtor's motion for a preliminary injunction, the Court finds that invoices totaling

$298,764 are immediately due.  Accordingly, the Court grants in part the Debtor's motion, and an

injunction will issue for the immediate payment of $298,764.  The Court will set a hearing to consider

arguments regarding the invoices not presently due and/or in dispute.  This opinion constitutes the Court's

findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The

Court will issue a separate final order consistent with this opinion.

DATED this 21st day of November, 2005, at Manchester, New Hampshire.


/s/ Mark W. Vaughn
Mark W. Vaughn
Chief Bankruptcy Judge
District of New Hampshire
Sitting by designation